REVISED DECEMBER 21, 2001
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-51212
_____


SALOME FIERROS

                              Plaintiff - Appellant

     v.


TEXAS DEPARTMENT OF HEALTH

                              Defendant - Appellee

_____

Appeal from the United States District Court
for the Western District of Texas, San Antonio
_____
November 21, 2001

Before KING, Chief Judge, and DUHÉ and BENAVIDES, Circuit Judges.

KING, Chief Judge:

     Plaintiff-Appellant Salome Fierros appeals from the district

court's summary judgment dismissing her Title VII retaliation

claim.  For the following reasons, we REVERSE the district

court's judgment and REMAND to that court for further

proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

     For over twenty-five years, Plaintiff-Appellant Salome

Fierros, a Hispanic female, worked as a laboratory technician for

the Texas Center for Infectious Disease, a department of the Texas Department of Health ("TDH"). In October 1996, Fierros filed an internal complaint with TDH's Office of Civil Rights ("OCR") against the Clinical Division Program Director, Douglas Arnold, alleging that he had discriminated against her based on her ethnicity and gender. Specifically, she claimed that Arnold had discriminated against her by assigning her secretarial duties that a Hispanic male and a white female who were also laboratory technicians were not required to perform. Seven months later, in May 1997, Arnold denied Fierros a merit pay increase of $57 per month that had been recommended by her immediate supervisor, Timothy Carter.

After confronting Arnold about his denial of the merit pay increase, Fierros filed another internal complaint with the OCR alleging that she had been denied the pay increase in retaliation for filing the original OCR discrimination complaint against Arnold. She then filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging gender and national origin discrimination and retaliation in violation of 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a) (1994) ("Title VII").

While her EEOC charge was pending, Fierros received two disciplinary "counseling sessions," one in September 1998 regarding purported abuse of the sick leave policy and another in November 1998 regarding purported inappropriate sexual behavior in the workplace. Fierros amended her EEOC charge to allege that

2

TDH also retaliated against her by subjecting her to these two disciplinary actions. On June 4, 1999, the EEOC issued a determination on Fierros's charges, finding that "[b]ased upon the totality of the evidence, there is reasonable cause to believe that [TDH's] employment decisions were [retaliatory] as alleged with respect to [Fierros's] being denied a merit increase and subjected to written counselings because she complained of discrimination." However, the EEOC concluded that the evidence did not support Fierros's charge of gender and national origin discrimination. Because it found that TDH had violated Title VII, the EEOC recommended informal methods of conciliation.

The EEOC sent its determination of Fierros's case to the U.S. Department of Justice ("DOJ") for review. On September 28, 1999, the Civil Rights Division of the DOJ sent Fierros a letter giving her notice of her right to bring a Title VII action against TDH within ninety days of receipt of the letter. On December 16, 1999, Fierros timely filed suit against TDH in federal district court, claiming that TDH had retaliated against her in violation of 42 U.S.C. § 2000e-3(a). The district court granted TDH's motion for summary judgment on October 16, 2000, dismissing Fierros's retaliation claim. The district court subsequently extended the deadline for filing a motion for reconsideration of the summary judgment to November 10, 2000. Fierros filed her motion for reconsideration three days late, and the district court denied the motion.

On November 16, 2000, Fierros timely appealed the district court's summary judgment against her. On February 20, 2001, she filed a motion with this court to supplement the record on appeal with the exhibits that she had attached to her motion for reconsideration of the district court's summary judgment decision. According to Fierros, those exhibits were "treated as stricken" by the district court. This court denied her motion to supplement the record on March 12, 2001.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same Rule 56 standard as the district court. Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2001) (citing FED. R. CIV. P. 56). "Although summary judgment is not favored in claims of employment discrimination, it is nonetheless proper when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" Waggoner v. City of Garland, 987 F.2d 1160, 1164 (5th Cir. 1993) (quoting FED. R. CIV. P. 56(c)). In making a summary judgment determination, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Bishop, 238 F.3d 586, 589 (5th Cir. 2000). The Supreme Court recently emphasized the paramount role that juries play in Title VII cases, stressing that in evaluating summary judgment evidence, courts must refrain from the making of "[c]redibility determinations, the weighing of

4

the evidence, and the drawing of legitimate inferences from the facts," which "are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986)).

### III. TITLE VII RETALIATION CLAIM

Under 42 U.S.C. § 2000e-3(a), it is

> an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (1994). In order to establish a prima facie case of retaliation under § 2000e-3(a), a plaintiff must demonstrate: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." Evans v. City of Houston, 246 F.3d 344, 352 (5th Cir. 2001) (quoting Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996)).

This court has determined that only "ultimate employment decisions," "such as hiring, granting leave, discharging, promoting, and compensating" satisfy the "adverse employment action" element of a prima facie case of retaliation. Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995) (citation omitted). "'[I]nterlocutory or mediate' decision[s] which can lead to an

5

ultimate decision" are insufficient to support a prima facie case of retaliation.  Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997).  Put differently, the "ultimate employment decision" doctrine requires that actionable adverse employment actions "have more than a 'mere tangential effect on a possible future ultimate employment decision.'"  Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 519 (5th Cir. 2001) (quoting Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000)).

The allocation of the burden of proof in Title VII retaliation cases depends on the nature of the plaintiff's evidence supporting the causation element.  If the plaintiff seeks to establish causation by circumstantial evidence, the tripartite burden-shifting framework of McDonnell Douglas applies.  See Portis v. First Nat'l Bank, 34 F.3d 325, 328 (5th Cir. 1994) ("Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in McDonnell Douglas[, which] establishes a prima facie case by inference.").  Under the McDonnell Douglas framework, the plaintiff carries the initial burden of establishing a prima facie case of retaliation.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  At this threshold stage, the standard for satisfying the causation element is "much less stringent" than a "but for" causation standard.  Long, 88 F.3d at 305 n.4.

A McDonnell Douglas prima facie showing establishes an inference of retaliatory motive that the employer can rebut by

6

producing evidence of a legitimate, non-retaliatory reason for the adverse action.  Evans, 246 F.3d at 354.  If the employer produces such evidence, then the plaintiff has the burden of proving that the Title VII protected activity "was a 'but for' cause of the adverse employment decision."  Long, F.3d at 305 n.4.  "If the plaintiff presents evidence supporting the prima facie case, plus evidence that the reasons given by the employer for the adverse employment action were pretextual, a jury may infer" the existence of this "but for" causation.  Mota, 261 F.3d at 519-20 (citing Reeves, 530 U.S. at 148).

If, on the other hand, the plaintiff presents direct evidence that the employer's motivation for the adverse action was at least in part retaliatory, then the McDonnell Douglas framework does not apply.  See Moore v. U.S. Dep't of Agric., 55 F.3d 991, 995 (5th Cir. 1995) (noting that because the plaintiffs presented direct evidence of discriminatory animus, they "are entitled to bypass the McDonnell Douglas burden-shifting framework commonly applied in discrimination cases and proceed directly to the question of liability").  In such "direct evidence" cases, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor."  Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993).

7

The district court's summary judgment in favor of TDH rested on two grounds. First, the district court held that Fierros failed to establish the "adverse employment action" element of a retaliation claim because the district court determined that a denial of a pay increase does not, <u>as a matter of law</u>, amount to an "adverse employment action" under this court's decision in <u>Mattern</u>.[1] Second, the district court found that Fierros presented insufficient evidence of the causation element because she demonstrated only "a subjective belief that TDH's actions were retaliatory in nature." We conclude that both of these determinations are erroneous and that Fierros has introduced sufficient evidence to entitle her to present her retaliation claim to a jury.

### A. Whether the Denial of a Pay Increase Can Be an "Adverse Employment Decision"

TDH argues that the district court properly interpreted <u>Mattern</u> as holding that pay increase denials are not "ultimate employment decisions" as a matter of law, and thus cannot form the basis of a Title VII claim. Fierros contends that this court should repudiate its "ultimate employment decision" doctrine because it is contrary to the Supreme Court's decisions in

---

[1]  In the district court, Fierros claimed that TDH retaliated against her by subjecting her to unjustified disciplinary actions (i.e., the two "counseling sessions") as well as by denying her the merit pay increase. On appeal, however, she bases her retaliation claim only on the pay increase denial. Accordingly, we do not address whether the disciplinary counseling sessions constitute adverse employment actions for Title VII purposes.

<u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337 (1997), <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998), and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998).  According to Fierros, these three decisions indicate that this court's "ultimate employment decision" doctrine improperly narrows the scope of Title VII by excluding employment actions such as pay increase denials from the statute's protection.[2]

---

[2]  In <u>Robinson</u>, <u>Burlington Industries</u>, and <u>Faragher</u>, the Supreme Court's holdings expanded the category of "employment actions" that may provide the basis for liability under Title VII.  In <u>Robinson</u>, the Court held that actions by <u>former</u> employers are included within the anti-retaliation provision of Title VII.  519 U.S. at 346.  In <u>Burlington Industries</u> and <u>Faragher</u>, the Court held that an employer may be held vicariously liable for an employee's sexual harassment claim in cases in which a "tangible employment action" did not occur.  <u>See</u> <u>Burlington Indus.</u> 524 U.S. at 765-66; <u>Faragher</u>, 524 U.S. at 807.  In addition to the generally expansive nature of these cases, <u>Burlington Industries</u> and <u>Faragher</u> are noteworthy in the context of this court's "ultimate employment decision" doctrine because the Supreme Court sets out a relatively broad definition of "tangible employment action": "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  <u>Burlington Indus.</u>, 524 U.S. at 761; <u>see also</u> <u>Faragher</u>, 524 U.S. at 790 (stating that tangible employment actions include "hiring, firing, promotion, compensation, and work assignment").  In pointing to <u>Burlington Industries</u>, Fierros undoubtedly relies on the Court's conclusion that "[i]n the context of this case, a tangible employment action would have taken the form of a <u>denial of a raise</u> or a promotion." 524 U.S. at 761 (emphasis added).

This court has recognized that the definition of "tangible employment action" developed in the sexual harassment context in <u>Burlington Industries</u> may be the proper "adverse employment action" standard for Title VII retaliation claims, but has not yet decided the issue.  <u>See</u> <u>Watts v. Kroger Co.</u>, 170 F.3d 505, 510 n.4, 511 n.5 (5th Cir. 1999) ("We do not reach the question of whether 'tangible employment action,' as defined by [<u>Burlington Industries</u>], is identical to our definition of an 'adverse employment action' found in <u>Mattern</u>," because "even if <u>Burlington</u> lowers the bar as to what qualifies as an adverse

9

Fierros paints with a broader stroke than is necessary to decide this case. We need not evaluate whether the "ultimate employment decision" doctrine is undermined by the Supreme Court's recent Title VII decisions because <u>Mattern</u> does not hold that the denial of a pay increase can <u>never</u> be an "ultimate employment decision." Rather, <u>Mattern</u> establishes only that the denial of the pay increase that occurred <u>in that case</u> was not an "ultimate employment decision." In reaching that conclusion, we explained that the possibility of a pay increase was significant to the plaintiff only because it was one of the necessary conditions of passing a training program for a new position. The plaintiff's "conten[tion was] that . . . receiving poor evaluations and a missed [pay] increase were 'quickly <u>leading to the ultimate adverse employment action</u>.'" <u>Id.</u> (emphasis in original). In contrast, in the instant case, Arnold's denial of Fierros's recommended pay increase <u>is</u> the employment action from which Fierros sought relief in federal court.

The language of Title VII further supports our reading of <u>Mattern</u>. Title VII's anti-retaliation provision makes it unlawful "for an employer to <u>discriminate</u> against any of his employees" because the employee engaged in a protected activity. 42 U.S.C. § 2000e-3(a) (emphasis added). In <u>Mattern</u> we relied on § 2000e-2(a)(1) to ascertain the meaning of "discriminate" in

_____

employment action, Watts cannot satisfy the definition of a tangible employment action as defined by <u>Burlington</u>.") (citations omitted).

10

§ 2000e-3(a).  See Mattern, 104 F.3d at 708-09.  Subsection 2000e-2(a)(1) provides: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment."  § 2000e-2(a)(1) (emphasis added).  This language clearly contemplates that the denial of a pay increase can be an act of "discrimination" against an employee.

Moreover, in cases since Mattern, we have held that a denial of a pay increase and similar actions are "ultimate employment decisions."  In Rubinstein v. Administrators of the Tulane Educational Fund, this court upheld a jury verdict that the employer had unlawfully retaliated against the plaintiff in denying him a pay raise.  See 218 F.3d 392, 402 (5th Cir. 2000).  Similarly, in Mota, we reasoned that the employer's discontinuation of the plaintiff's stipend qualified as an "ultimate employment decision" because it was "a compensation decision."  261 F.3d at 521; see also id. (concluding that the employer's denial of paid leave was an "ultimate employment decision" for purposes of the plaintiff's Title VII retaliation claim).

Conceding that our cases recognize that employment actions affecting compensation are often "ultimate employment decisions," TDH argues that such actions are "ultimate employment decisions"

11

only if the employee's current compensation is reduced. According to TDH, the employment action at issue in the instant case, i.e., a "simpl[e] fail[ure] to receive a modest increase in pay," does not rise to the level of an "ultimate employment decision." This distinction is untenable. If Fierros had received the merit pay increase, she would be making a higher salary. The merit pay increase is important to her not only as a recognition of her contribution to TDH as a laboratory technician, but also as a source of income. As Fierros points out, in light of her annual salary of $20,924.97, the $57-per-month pay increase is not, as TDH claims, "de minimis." It is illogical to construe Title VII as prohibiting discriminatory decreases in pay, but permitting discriminatory denials of pay increases.

We hold that in light of our reasoning in <u>Mattern</u>, the language of Title VII, and our post-<u>Mattern</u> jurisprudence, the denial of a pay increase can be an "ultimate employment decision" actionable under Title VII's anti-retaliation provision. We further conclude that in the instant case, Arnold's denial of Fierros's merit pay increase was an "ultimate employment decision." Fierros seeks Title VII relief from the denial of the pay increase itself, and not from any employment action that the pay increase denial might lead to. Thus, she has established the second element of a prima facie case for retaliation.

Because Fierros's filing of the internal discrimination complaint against Arnold is a Title VII "protected activity," Fierros has also satisfied the first element of the prima facie case for retaliation. See Dollis, 77 F.3d at 779, 781 (recognizing that the plaintiff's use of her employer's internal administrative process to file an employment discrimination complaint "is clearly protected activity" for purposes of a Title VII retaliation claim). TDH does not attempt to argue otherwise. Accordingly, Fierros is entitled to a jury trial if she presented sufficient summary judgment evidence of the third element, i.e., that Arnold denied her the merit pay increase because she filed the discrimination complaint against him.

### B. Whether the Evidence of Causation Was Sufficient to Survive Summary Judgment

In addition to holding that Fierros failed to assert an "ultimate employment decision," the district court concluded that Fierros failed to present any evidence other than her "subjective belief" that Arnold had a retaliatory motive in denying her the merit pay increase. Although TDH does not defend this second ground of the district court's summary judgment, TDH does insist that we should not consider the evidence of retaliatory motive that Fierros submitted with her motion for reconsideration of the summary judgment. According to TDH, because Fierros did not file that motion until after she filed her notice of appeal, and because she does not attempt to argue in her brief that the district court erred in denying that motion, she may not rely on

13

that evidence in urging this panel to reverse the summary judgment against her.

We need not determine whether it would be appropriate to consider the evidence that Fierros filed with her motion for reconsideration. There is sufficient evidence in the record relied upon by the district court to raise a genuine issue of material fact regarding whether TDH retaliated against Fierros in violation of Title VII. The summary judgment record includes an affidavit in which Fierros states that Arnold told her that she had been denied the pay increase because she filed a discrimination complaint against him. Such an affidavit is <u>direct</u> evidence that Arnold had a retaliatory motive because it "is evidence which, if believed, proves the fact [of intentional retaliation] without inference or presumption." <u>Brown</u>, 989 F.2d at 861.

Apparently, the district court concluded that the affidavit evinced only Fierros's "subjective belief" that a retaliatory motive was behind Arnold's decision to deny her the pay increase. But Fierros does not attest to her <u>belief</u> that Arnold had a retaliatory motive in her affidavit. She attests that Arnold made a <u>statement</u> to her admitting that he had a retaliatory motive. "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." <u>Portis</u>, 34 F.3d at 329; <u>cf.</u> <u>Rubinstein</u>, 218 F.3d at 402 (finding that a dean's testimony that he denied a

14

professor a pay raise because the professor filed a discrimination suit against the university "could be no more direct on the issue of retaliation"). Further, in Portis, we explicitly rejected the argument that the plaintiff's testimony regarding the employer's discriminatory statements was merely testimony "regarding [the plaintiff's] subjective belief." 34 F.3d at 329. We noted that in contrast to testimony regarding subjective belief, testimony regarding the employer's statements is direct evidence because it "require[s] no additional inference to conclude that [the plaintiff] was [discriminated against]." Id.

Unlike a case in which the plaintiff has presented only circumstantial evidence of retaliatory animus, we do not apply the McDonnell Douglas burden-shifting framework to determine whether Fierros's direct evidence presents a factual issue for a jury. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."); Portis, 34 F.3d at 328 (same). Fierros's affidavit by itself precludes summary judgment because it presents a genuine issue of material fact regarding whether "[retaliatory] animus in part motivated or was a substantial factor in the contested employment action." Brown, 989 F.2d at 861; see also Vance v. Union Planters Corp., 209 F.3d 438, 442 (5th Cir. 2000) (noting that even if the Title VII plaintiff "were the only witness to testify

15

about the [employer's discriminatory] statements[,] that would not warrant taking the case out of the jury's hands"); Portis, 34 F.3d at 329-30 n.10 (reversing the district court's grant of the employer's post-verdict motion for judgment as a matter of law, noting that "the plaintiff's testimony on its own . . . is enough to establish intentional discrimination").

Our determination that Fierros has raised a jury question about whether Arnold intended to retaliate against her when he denied her the merit pay increase is further supported by circumstantial evidence. See Vance, 209 F.3d at 443 (concluding that while the testimony regarding the employer's discriminatory statements was sufficient direct evidence of discrimination to support the jury's verdict for the plaintiff, this direct evidence was also supported by circumstantial evidence). First, the person who was the subject of Fierros's discrimination complaint (Arnold) was the same person who denied her the pay increase.

Second, the evidence that Fierros produced regarding the two disciplinary "counseling sessions" that she received after filing her EEOC charge further indicates the existence of a retaliatory motive. Although we need not determine whether these two disciplinary actions are "ultimate employment decisions," see supra note 1, even if the disciplinary actions do not amount to ultimate employment decisions, they may still evince Arnold's retaliatory motive. The plaintiff in Thomas v. Texas Department

16

of Criminal Justice "presented evidence that after [she filed] EEOC charges she was disciplined twice, and she had never received any disciplinary actions in the 18 years prior to the filing of her charges."  220 F.3d 389, 394 (5th Cir. 2000). Although this court held that the disciplinary actions taken against the plaintiff were not "ultimate employment decisions," we noted that "[t]he jury could properly consider" the disciplinary actions "as indications of [the employer's retaliatory] motives in . . . fail[ing] to promote or transfer [the plaintiff]," i.e., the "ultimate employment decisions" at issue.  Id. at 394 & n.2.

Fierros's evidence regarding the two counseling sessions is similar to the evidence of disciplinary actions that this court found persuasive in Thomas.  Fierros was disciplined twice within a two-month period after she filed a second internal discrimination complaint with the OCR and her initial charge with the EEOC.  Fierros had been a highly-regarded employee at TDH for over twenty years before she filed the discrimination charges. It is undisputed that Carter recommended that Fierros receive the merit pay increase because of her work performance, and Fierros produced documentary evidence showing that she had maintained an impressive performance record as a TDH employee.  Further, Fierros presented evidence that another employee who filed discrimination charges against TDH was also given a counseling session for abuse of the sick leave policy after she filed the

17

charges, and that an employee who had not filed any charges and was otherwise similarly-situated to Fierros (i.e., who engaged in the same conduct as that which formed the basis of the disciplinary action taken against Fierros) was not given counseling sessions.

Even assuming that Fierros had presented only circumstantial evidence and thus that the McDonnell Douglas framework applied, she would have raised a factual issue precluding summary judgment. Fierros's circumstantial evidence is certainly sufficient under the initial "much less stringent than 'but for'" standard to establish a prima facie showing of causation. See Long, 88 F.3d at 306 (concluding that in light of the evidence that the employer knew about the protected activity and took the adverse employment action thereafter, "we have no trouble finding sufficient evidence, for prima facie case purposes, to establish a causal link"). Because TDH has not offered a non-retaliatory reason for denying Fierros the pay increase that would rebut the inference of retaliatory animus raised by Fierros's prima facie case, Fierros need not establish more than a prima facie case of retaliation to survive summary judgment.

## IV. CONCLUSION

We conclude that (1) TDH's denial of Fierros's merit pay increase is an "ultimate employment decision," and (2) Fierros presented sufficient direct evidence of causation to withstand summary judgment. Thus, we REVERSE the district court's judgment

18

in favor of TDH and REMAND to that court for further proceedings. Costs shall be borne by TDH.