**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 6, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-20362

TYRONE HAMILTON

Plaintiff - Appellant

v.

TEXAS DEPARTMENT OF TRANSPORTATION

Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas
No. H-01-CV-3884

Before KING, Chief Judge, and JONES and SMITH, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Tyrone Hamilton appeals the magistrate judge's grant of summary judgment to Defendant-Appellee Texas Department of Transportation ("TxDOT") on his Title VII retaliation claims. For the following reasons, we AFFIRM.

I.   BACKGROUND

In this lawsuit, Hamilton, an African-American man, claims that he was both demoted and denied a promotion in retaliation for previously filing a Title VII employment discrimination

---

[*]   Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

lawsuit against his employer, TxDOT. Hamilton alleged race discrimination in his first complaint against TxDOT, filed with the Equal Employment Opportunity Commission (EEOC) in January 1998, after TxDOT chose to promote a white employee--rather than Hamilton--to a supervisory position. Later, TxDOT removed the white employee from this position and competitively posted the job opening. Hamilton submitted his application but did not complain when TxDOT chose instead to hire Sergio Rodriguez, a Hispanic man. Hamilton did, however, file suit against TxDOT in June 1999 alleging, inter alia, that TxDOT's failure to promote him in January 1998 was based on racial animus. Ultimately, the district court granted summary judgment to TxDOT in this first lawsuit on May 11, 2001. A panel of this court affirmed the district court's judgment in March 2002, agreeing that Hamilton had failed to demonstrate that he was qualified to receive the promotion in question. Hamilton v. Tex. Dep't of Transp., No. 01-20628 (5th Cir. March 19, 2002).

Hamilton claims that TxDOT unlawfully retaliated against him for filing the first Title VII lawsuit by subjecting him to at least two more adverse employment actions, which form the basis of second Title VII lawsuit.[1] See 42 U.S.C. § 2000e-3(a) (2000).

_____

[1] Initially, Hamilton alleged eleven incidents of retaliatory discrimination in the instant lawsuit. On September 3, 2002, however, the magistrate judge recommended granting summary judgment to TxDOT on most of these claims. Hamilton has not appealed this order and, as explained in the text, he asserts only two instances of retaliatory discrimination in the present

First, Hamilton contends that TxDOT demoted him in September 2001, by changing his job responsibility level from "lead worker" to "individual worker." Second, Hamilton asserts that TxDOT denied his request for a career-ladder promotion in May 2001 based on his decision to appeal for a new trial in his first Title VII lawsuit.

After the parties consented to proceedings before the magistrate judge and engaged in limited discovery, TxDOT moved for summary judgment. On September 3, 2002, the magistrate judge found that Hamilton had not exhausted his administrative remedies with regard to the demotion claim and recommended granting summary judgment to TxDOT. However, the magistrate judge recommended denying TxDOT's motion for summary judgment on the promotion claim. The district court adopted the magistrate judge's recommendations in full, but granted leave both: (1) for Hamilton to amend his complaint to plead administrative exhaustion of the demotion claim and (2) for TxDOT to file a second motion for summary judgment on both claims. The parties then consented to trial by the magistrate judge under 28 U.S.C. § 636(c). On March 19, 2003--after Hamilton amended his complaint and TxDOT made a second motion for summary judgment-- the magistrate judge granted TxDot's motion and entered a final judgment in its favor. Hamilton timely appealed the decision to

appeal.

this court.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment <u>de novo</u>, applying the same standard as the district court.  <u>Fierros v. Tex. Dep't of Health</u>, 274 F.3d 187, 190 (5th Cir. 2001).  Summary judgment is proper when the entire record, viewed in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law.  <u>Blow v. City of San Antonio</u>, 236 F.3d 293, 296 (5th Cir. 2001); <u>see also</u> FED. R. CIV. P. 56(c).  Although in our review of the record we must draw all reasonable inferences in favor of the nonmoving party, <u>Fierros</u>, 274 F.3d at 190, "[t]he moving party is entitled to a judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Moreover, we have stated that the nonmoving party does not demonstrate the existence of a genuine issue of fact (and does not thereby avoid summary judgment) by asserting "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal

-4-

quotation marks omitted).

## III. TITLE VII RETALIATION CLAIMS

    A.    *Reclassifying Hamilton from a "lead worker" to an "individual worker"*

To state a claim of retaliatory discrimination under 42 U.S.C. § 2000e-3(a), Hamilton must prove that (1) he engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) a causal connection existed between his participation in the protected activity and the adverse employment action. See Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 414 (5th Cir. 2003). Hamilton's first claim alleges that TxDOT retaliated against him for filing the first Title VII lawsuit by changing his job responsibility level from "lead worker" to "individual worker" in September 2001. The first element of the prima facie case for this claim is satisfied because, when he filed a lawsuit under Title VII, even an unsuccessful lawsuit, Hamilton engaged in a "protected activity." See 42 U.S.C. § 2000e-3(a) (making it unlawful for an employer to retaliate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII).

The magistrate judge awarded summary judgment to TxDOT on this claim, however, after finding TxDOT's decision to reclassify Hamilton from a "lead worker" to an "individual worker" does not qualify as an "adverse employment action." We agree. In Dollis,

we explained that the retaliation provision of Title VII "was designed to address ultimate employment decisions," for example, "hiring, granting leave, discharging, promoting, and compensating." 77 F.3d 777, 781-82 (5th Cir. 1995) (emphasis added) (citation omitted). Demotions, to the extent that they "affect job duties, compensation, or benefits" have also been considered ultimate employment decisions. Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks omitted). However, we have explained that an employee has not satisfied the second element of his prima facie case under § 2000e-3(a) if he alleges only that he suffered a negative employment action "that arguably might have some tangential effect upon [future] ultimate decisions." Dollis, 77 F.3d at 781-82; see also Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997) (discussing the genesis of this rule). Therefore, we have repeatedly held that an employment action that limits an employee's future opportunities for promotion, but does not itself affect the employee's job duties, compensation, or benefits, does not qualify as an adverse employment action. Banks, 320 F.3d at 575; accord Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000) (stating that an employer's decision to remove the employee's major account from her after she filed a complaint with the EEOC did not qualify as an adverse employment action, even though the employee's chances of advancement were decreased); Dollis, 77 F.3d at 782 (holding

-6-

that employer's refusals either to consider whether the plaintiff deserved a promotion or to provide the employee with training opportunities, thereby decreasing future promotion opportunities, were not ultimate employment decisions).

Our review of the summary judgment record reveals that Hamilton's altered job responsibility level, although possibly decreasing his likelihood of receiving future job promotions, was not the result of an adverse employment action. Neither party disputes that Hamilton's duties, benefits, and compensation did not change in September 2001 when his position was reclassified as that of an "individual worker." Instead, TxDOT's unchallenged evidence demonstrates that this action was the last in a series of statewide job reclassification steps taken by TxDOT. First, in July 1998 TxDOT altered the "state titles"[2] of many of its engineering positions in an effort to match more closely the prevailing market wages for similarly qualified engineers. As a result, all TxDOT employees previously classified as "Engineering Specialist I"--including Hamilton--were promoted to the state title, "Engineering Specialist II," and received a pay increase. Then in February 2001, all TxDOT employees in Hamilton's title, "Engineering Specialist II" were promoted to state title "Engineering Specialist IV"--a "lead worker" position--and they

_____

[2]     A TxDOT employee has two job titles: a business or functional title, which is used to describe the employee's job duties and responsibilities, as well as a "state title," which is used to determine the employee's pay rate.

-7-

received a second raise in salary. Moreover Hamilton does not dispute TxDOT's evidence that it attempted to readjust its supervisor-to-subordinate ratios over the following months to meet state goals. As part of this review, TxDOT decided that the duties and responsibilities of the "Engineering Specialist IV" position were not those of a "lead worker." Thus, it was reclassified as an "individual worker" position in September 2001.[3]

Hamilton's only complaint with this process stems from his belief that he was actually performing the duties of a supervisor when TxDOT decided that he should no longer be classified as a "lead worker." Without the official status of "lead worker," Hamilton contends, he will no longer be eligible for management training courses and he will have difficulty receiving future promotions within TxDOT. Although we assume that Hamilton's concerns are valid at this stage in the proceedings, we nevertheless conclude that he has not suffered an adverse employment action. The alteration from "lead worker" to "individual worker" did not affect either Hamilton's pay rate or his job duties. Therefore, we recognize the possibility that

---

[3] TxDOT's evidence, which Hamilton does not challenge, demonstrates that a number of other job titles were reclassified from lead worker to individual worker during the same time frame. In addition, TxDOT has provided evidence that the other two Engineering Specialist IV employees in the same subsection of TxDOT as Hamilton were also reclassified from "lead workers" to "individual workers" at this time.

this reclassification may have a tangential effect on future ultimate employment decisions, but this tangential effect does not satisfy the second element of a prima facie case of retaliation. For these reasons, we agree with the magistrate judge's grant of summary judgment to TxDOT on this claim.

B. *Denying Hamilton's request for a career-ladder promotion*

In his second claim, Hamilton alleges that he was denied a career-ladder promotion in retaliation for pursuing his first Title VII lawsuit. As we explained above, when he filed and participated in a Title VII lawsuit against his employer, Hamilton engaged in an activity protected by § 2000e-3(a). Thus, he has satisfied the first element of his prima facie case with respect to this claim.

In addition, Hamilton presented evidence that, on May 2, 2001, he attached to his performance evaluation a written request that he be considered for a career-ladder promotion "to Engineering Assistant V." On June 29, 2001, Stuart Corder, the District Traffic Engineer in TxDOT's Houston District, sent Hamilton a letter denying this request. Based on this evidence, the magistrate judge found that Hamilton had satisfied the second element of his prima facie case: not being granted a promotion is an adverse employment decision. See Dollis, 77 F.3d at 781-82.[4]

---

[4] TxDOT disagrees that denying Hamilton's promotion was an adverse employment action and asks us to follow Brown v. Coach Stores, 163 F.3d 706, 710 (2d Cir. 1998), in which the Second

-9-

We now turn to the third element of Hamilton's prima facie case: causation.  A plaintiff may attempt to establish causation in one of two ways: by circumstantial evidence or by direct evidence.  On the one hand, "[i]f the plaintiff seeks to establish causation by circumstantial evidence, the tripartite burden-shifting framework of McDonnell Douglas applies." Fierros, 274 F.3d at 191.  Under this framework, the plaintiff's circumstantial prima facie case creates a rebuttable presumption of retaliation and shifts the burden of production to the employer, who must provide a legitimate, non-retaliatory reason for the adverse employment decision.  If the employer presents a legitimate reason, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is pretextual.  See Fabela, 329 F.3d at 415 n.6; Fierros, 274 F.3d at 191-92.  In retaliation cases, we have held that "this final burden requires the plaintiff to demonstrate that the adverse employment action would not have occurred 'but for' the protected activity."  Rios v. Rossotti, 252 F.3d 375, 380 (5th Cir. 2001).

On the other hand, "in the unusual instance where the

Circuit noted that "generally requesting a promotion in an annual review" does not create a prima facie case of retaliation.  It is not clear that this rule applies to the instant case, however, because Hamilton--unlike the plaintiff in Brown--submitted a written request for a specific promotion during his annual review.  Nevertheless, we do not reach this issue because we conclude below that Hamilton has failed to meet his burden of proving that TxDOT's asserted reasons for denying the promotion are pretextual.

plaintiff is able to support the elements of her claim with direct evidence of a retaliatory motive, the McDonnell Douglas framework does not apply." Fabela, 329 F.3d at 415. Under this, the "mixed-motive" method, the plaintiff's production of direct evidence that "retaliation was among the motives which prompted the adverse action" shifts the burden of proof to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor. Id. at 415.

Whether Hamilton has provided circumstantial or direct evidence of causation is a key issue in this case. In response to TxDOT's motion for summary judgment, Hamilton offered the following evidence of retaliatory motivation: A few days after asking for a promotion, Hamilton met with his immediate supervisor, Rodriguez, to inquire about the status of the request. Rodriguez informed Hamilton that he would refer the matter to the District Traffic Manager, Corder, because he did not have the authority to make the promotion decision. During this meeting, Hamilton claims that Rodriguez stated that Hamilton's promotion depended on the outcome of his first Title VII lawsuit. At a hearing before the magistrate judge, Hamilton clarified both the context and the contents of this remark:

> he mentioned . . . this was prior to the 11th, before [the first lawsuit] was dismissed--he said, "Well you know, . . . we have to see what the outcome of the lawsuit, 'cause the Court might put you back into my

original position."[5]

Hamilton also contends that he asked Rodriguez about the progress of his promotion after May 11, and that during this second meeting Rodriguez warned him not to appeal for a new trial. Nevertheless, Hamilton chose to file an appeal and later sent an email to Rodriguez urging that his promotion request not be denied "on the base [sic] if I appeal for new trial as you had mention [sic] in part."  Rodriguez forwarded this message to Corder, and on June 29, 2001, Corder sent Hamilton a letter denying the promotion.[6]

The magistrate judge did not treat Hamilton's allegations as direct evidence of retaliatory motivation, however, because Hamilton never asserted that Rodriguez was primarily responsible

---

[5]    In Hamilton's first Title VII lawsuit, he claimed that he should have been promoted to the position held by Rodriguez. Thus, even when viewed in the light most favorable to Hamilton, we simply do not understand how this statement, standing alone, demonstrates that retaliation played a role in TxDOT's eventual decision not to promote Hamilton.

[6]    In the letter, Corder admitted that he was aware of Hamilton's belief that Rodriguez warned him not to appeal the first Title VII lawsuit.  But Corder vehemently denied that the lawsuit played any role in his decisionmaking process, stating:
> Your lawsuit with the Department, and any of your decisions related to that lawsuit, have in no way been a part of my consideration of your request for promotion. I asked Sergio about this, and he told me he has never said this to you in the past.  Matters brought in your lawsuit occurred prior to the arrival of Mr. Rodriguez and I.  We have worked very hard to ensure that the daily operations of the office remain independent from the lawsuit, in an effort to provide a productive work environment.

for the decision to deny his promotion.  We agree with this analysis because the uncontradicted evidence shows that Corder, not Rodriguez, made the promotion decision.  Hamilton's only proffered link between Rodriguez's statements and Corder's decision, that Rodriguez should have had the authority to grant the promotion, misses the mark.  Even assuming that Rodriguez made the statements in question--as we must--his statements do not constitute direct evidence that retaliation was one of the motivations for Corder's decision to deny Hamilton's promotion.[7]

We have defined direct evidence strictly as "evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption."  Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993) (emphasis added).  For example, we have held that a job interviewer's statement that the plaintiff's age caused him concern was not direct evidence of discrimination in the employer's decision not to hire the plaintiff.  Haas v. ADVO Sys., Inc., 168 F.3d 732, 733-34 (5th Cir. 1999).  Although the interviewer's remarks were neither vague nor remote in time--and despite a reasonable inference that

----

[7]     We might be persuaded to find direct evidence of causation if Hamilton alleged that Corder acted merely as Rodriguez's "cat's paw"; that is, if Hamilton provided evidence that Corder essentially rubber-stamped Rodriguez's decision to deny the promotion.  See, e.g., Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226-27 (5th Cir. 2000) (discussing this doctrine).  Hamilton, however, ignores this theory: arguing that Rodriguez should have been able to deny the promotion does not establish that Rodriguez was primarily responsible for Corder's decision.

the interviewer had influenced the employer's hiring preferences--we nevertheless noted that an additional inference was required before we could conclude that the decisionmaker himself chose not to hire the plaintiff based on age discrimination.  Id. at 734; cf. Fierros, 274 F.3d at 195 (holding that a decisionmaker's own statement--that the plaintiff would not receive a pay increase because she engaged in protected activity--is direct evidence of discrimination).  In the context of TxDOT's motion for summary judgment, we must assume that Rodriguez made the statements alleged by Hamilton.  But these statements do not prove that retaliation played a part in Corder's decision, unless we also presume that Rodriguez had accurate information at the time he spoke (i.e., that Corder was, in fact, planning to deny the promotion if Hamilton appealed for a new trial).  Therefore, we find that Hamilton's evidence is circumstantial--not direct--evidence of retaliatory motivation.

If we view this circumstantial evidence in the light most favorable to Hamilton, he has satisfied the three prongs of a prima facie case of retaliation.  Under McDonnell Douglas, we must next determine whether TxDOT has met its burden of providing a legitimate, non-retaliatory reason for denying Hamilton's promotion.  TxDOT has provided at least three reasons for the nonpromotion.  First, Corder has stated that Hamilton lacked the requisite qualifications for the promotion he requested. Importantly, throughout Corder's tenure as District Traffic

-14-

Manager, only two employees held the title of Engineering Assistant V; each had more than thirty years of experience, each was promoted from a supervisory position, each was the head of a subsection of the department, and each regularly handled complex work assignments.  Hamilton, however, had less than ten years of experience at TxDOT and he did not hold a supervisory position.  Second, TxDOT contends that Hamilton did not meet Corder's primary criterion for exercising his discretion to grant career-ladder promotions: achieving the "exceeds standards" rating in an annual performance evaluation and thereby demonstrating the capability to undertake more advanced duties.  In both 1999 and 2000, Hamilton earned the "below standards" rating in several job categories, leading his evaluator to conclude: "employee's performance has not been up to par."  In May 2001, Hamilton evidenced some improvement, achieving a "meets standards" rating; nevertheless, under Corder's criteria, he still did not qualify for the requested promotion.  Third, according to a TxDOT administrator, it would have been highly unusual for Corder to approve Hamilton's promotion request because it would have placed Hamilton in a job title and salary rate higher than that of his direct supervisor, Rodriguez.  Under these circumstances, TxDOT claims that Corder's decision would have faced exacting scrutiny by higher-level officials in the Houston District.

In light of TxDOT's legitimate, non-discriminatory rationale for denying the promotion, the burden of production shifts back

to Hamilton to demonstrate that TxDOT's proffered reasons are merely pretextual. Critically, to survive TxDOT's motion for summary judgment, Hamilton's evidence of pretext must "raise [] a genuine issue of material fact" regarding the basis of Corder's decision to deny his promotion. Haas, 168 F.3d at 733 (quotation marks omitted). We conclude that Hamilton has not met this burden. Hamilton has provided no evidence suggesting that Corder's given reasons for not granting the promotion were untruthful. For example, Hamilton has not proffered evidence that Corder gave career-ladder promotions to other employees with the "meets standards" rating, nor does he claim that his qualifications are equivalent to those of the two TxDOT employees who have held the "Engineering Assistant V" position during Corder's tenure.

Hamilton instead relies on his belief that he deserved a promotion "because of [his] exceptional skills and acceptance of increased responsibilities" at TxDOT. Nonetheless, an employee's subjective belief that he deserved a promotion, without more, is insufficient proof of pretext to raise a genuine issue of fact regarding an employer's motivation. Cf. Portis v. First Nat'l Bank of New Albany,, 34 F.3d 325, 329 (5th Cir. 1994) ("'[G]eneralized testimony by an employee regarding his subjective belief that his discharge was the result of [] discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason

-16-

for his discharge.'" (quoting <u>Elliott v. Group Medical & Surgical Serv.</u>, 714 F.2d 556, 564 (5th Cir.1983) (alteration in original)). Accordingly, because Hamilton has not demonstrated that he would have received the promotion but for his first Title VII lawsuit, summary judgment for TxDOT was appropriate. <u>Rios</u>, 252 F.3d at 380.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.