United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 8, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-30951
Summary Calendar

STEVY Q. GREENE

Plaintiff - Appellant

v.

DAIMLERCHRYSLER SERVICES OF NORTH AMERICA

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 02:03-CV-1058T

Before KING, Chief Judge, and HIGGINBOTHAM and PRADO, Circuit
Judges.

PER CURIAM:[*]

Plaintiff-Appellant appeals the district court's grant of

summary judgment in favor of Defendant-Appellee in this Title VII

retaliation action.  For the following reasons, we AFFIRM.

#### I.  BACKGROUND

Plaintiff-Appellant Stevy Greene, an African-American male,

---

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

-1-

began working for Defendant-Appellee DaimlerChrysler Services of North America ("DCS") in October 1996 as a contract worker. In August 1997, Greene began working for DCS in its New Orleans Zone office in an entry-level position in the customer service (collections) department. In early 2000, DCS initiated "Project Agility," a company-wide reorganization of its customer service functions. During this process, the customer service functions were removed from twenty-six Zone offices across the country, and they were consolidated into four customer service centers. Those centers were located in Troy, Michigan; Dallas, Texas; Philadelphia, Pennsylvania; and Kansas City, Kansas. The New Orleans Zone was assigned to the Kansas City Customer Service Center. The New Orleans employees were given notice of the impending move, which was scheduled for June 2002, and were advised that their jobs in New Orleans would no longer exist after the effective date of the move. All employees, including Greene, were informed that they would have the option to transfer to Kansas City in their current positions, attempt to secure other positions within DCS through the normal posting process, or accept a lay off and the standard lay-off package.

According to George Tallant, Zone Manager of the New Orleans Zone, after Greene's March 7, 2002 meeting with the Kansas City management, Greene said that he would rather move to Dallas but that he would accept the transfer to Kansas City if he was unable to secure another position within the company prior to his

-2-

transfer date.[1]  Greene attempted to secure a position in Dallas, but his efforts were unsuccessful.  On April 6, 2002, Greene received $8,506.40 in relocation benefits from DCS.  On April 17, 2002, Greene sent an email to Arnita Wilson in DCS's human resources department, stating: "If you are not able to relocate me to Dallas, I will still report to Kansas City on April 22, 2002 and give 100 percent."

On May 30, 2002, Greene sent an email to Tom McAlear, an operations manager for DCS, complaining that his requests for promotion and transfer to Dallas had been denied.  That email made references to equality and unfair treatment but did not expressly indicate that Greene had been discriminated against because of his race.[2]  On June 5, 2002, Greene spoke with Wilson

---

[1]     Thus, Greene declined the severance package.

[2]     The email stated, in relevant part:

It has been brought to my attention that upon recent positions in which I submitted for within the company, were rejected. [sic] The reason being, I was told that I am under-qualified for the positions.  I know that I am indeed qualified, maybe over-qualified but certainly not under.  It appears that other people in my department are being promoted or transferred without a degree and I am being overlooked for whatever reasons.  I feel that certain people are getting preferential treatment/perks. . . .
     I have always believed and still believe that [DSCS] is an equal opportunity employer, however I believe that I am not receiving a fair opportunity when it comes to promotions.  I am not looking for any special favors or handouts. . . .
     I believe values and equality are the backbone of any corporate culture.  It is the essence of a company's philosophy for achieving success.  Values

on the telephone, allegedly complaining of racial discrimination.[3]

Greene was ultimately unable to acquire a position with DCS in Dallas.  He relocated to Kansas City, effective June 7, 2002.[4] In Kansas City, he maintained the same entry-level position and the same level of pay that he had in New Orleans.  Shortly after moving to Kansas City, he took a leave of absence.  On June 29, 2002, Greene allegedly suffered an anxiety attack, and he has been on total, and then partial, disability since that time.[5]

On February 3, 2003, Greene filed a charge with the Equal Employment Opportunity Commission ("EEOC").[6]  He alleged that he had been transferred to Kansas City in retaliation for his complaints of racial discrimination and that the transfer

---

provide a sense of common direction for all employees
and equality is colorblind.

[3]     Wilson denies that Greene alleged racial discrimination in that conversation.

[4]     Although Greene's last day scheduled to be in New Orleans was April 15, 2002, DCS extended his relocation date to April 22, 2002, and then June 7, 2002, to accommodate his business school schedule and his attempts to find a position in the Dallas office.

[5]     Relying on an affidavit from Pamela Morgan, a human resources consultant with DCS, the district court stated that Greene resigned from his employment with DCS on June 19, 2003.

[6]     Greene originally filed a charge with the EEOC on June 7, 2002, the effective date of his transfer to Kansas City.  The EEOC issued a right-to-sue letter on December 4, 2002.  However, this charge was amended to include Greene's retaliation claim on February 3, 2003.

-4-

constituted a demotion.  On April 11, 2003, Greene filed this lawsuit in the United States District Court for the Eastern District of Louisiana, alleging retaliation in violation of Title VII.  On August 18, 2004, the district court granted summary judgment in favor of DCS.  Greene timely filed the instant appeal.

## II.  DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same standard as the district court.  Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001).  Summary judgment is proper when the record, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); see also Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2001).  "The moving party is entitled to a judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

DCS argues, and Greene does not dispute, that Greene's claims for retaliation are governed by the McDonnell Douglas

burden-shifting framework.[7]  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Fierros, 274 F.3d at 191-92.  Under this framework, "[a] Title VII plaintiff bears the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence."  LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996) (citing McDonnell Douglas, 411 U.S. at 802); see also Fierros, 274 F.3d at 191-92 (noting that "the plaintiff carries the initial burden of establishing a prima facie case of retaliation").  A plaintiff may satisfy this burden by demonstrating that: (1) he engaged in an activity protected by Title VII; (2) an adverse employment action was taken against him; and (3) a causal link existed between the protected activity and the adverse employment action.  Fierros, 274 F.3d at 191; Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996).

The plaintiff's prima facie showing of retaliation establishes an inference of the employer's impermissible retaliatory motive.  Fierros, 274 F.3d at 191.  The burden then shifts to the employer to produce a legitimate, nonretaliatory reason for the adverse employment action.  Id.  Once the employer produces evidence of such a reason, the plaintiff has the ultimate burden of proving that the proffered reason is merely a pretext for retaliation, which may be accomplished by

---

[7]     Accordingly, the court need not consider whether the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), or this court's decision in Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004), affect this case.

-6-

demonstrating that the adverse employment decision would not have occurred but for the protected activity.  Long, 88 F.3d at 305 n.4.  The jury may infer the existence of but-for causation from the combination of the plaintiff's evidence establishing the prima facie case of retaliation and the plaintiff's evidence that the reasons given by the employer are merely pretextual.  Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 519-20 (5th Cir. 2001).

The district court granted summary judgment in favor of DCS after finding that Greene failed to establish a prima facie case of retaliation.  With respect to the first element, the court noted that Greene alleged two instances of protected activity: the May 30 email to McAlear and the June 5 telephone conversation with Wilson.  The district court found that Greene's email was not a protected activity because it made only vague references to discrimination.  However, the court concluded that whether Greene's comments during the telephone conference with Wilson constituted protected activity was a question of fact.  The court further found that Greene had failed to establish the second element of his prima facie case because his transfer to Kansas City was not an adverse employment action.  Finally, the court determined that Greene failed to establish the third element as well because he did not show a causal connection between his allegedly protected activity and his transfer.

Because we agree with the district court that Greene's

transfer to Kansas City did not constitute an adverse employment action under Title VII, we find that Greene failed to establish a prima facie case of retaliation, and we need not address the district court's conclusions with respect to the first and third elements. This court consistently has held that to present a prima facie case for retaliation, a plaintiff must show that the employer took an "adverse employment action" against the plaintiff. See, e.g., Pegram v. Honeywell, Inc., 361 F.3d 272, 281-82 (5th Cir. 2004). In this circuit, only "ultimate employment decisions" qualify as the adverse employment actions necessary to establish a prima facie case of retaliation. Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997); see also Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995) (per curiam). Ultimate employment decisions include hiring, granting leave, discharging, promoting, and compensating. Mattern, 104 F.3d at 707; see also Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 531-32 & n.2 (5th Cir. 2003) (per curiam). Demotions are also considered adverse employment actions. See Sharp v. City of Houston, 164 F.3d 923, 933 n.20 (5th Cir. 1999). Furthermore, a change in one's employment position need not result in a reduction in pay in order to be considered a demotion. See id. at 933; Forsyth v. City of Dallas, 91 F.3d 769, 774-76 (5th Cir. 1996). Rather, an employer's decision to change an employee's job position may constitute a demotion if the new position is objectively worse.

-8-

See Sharp, 164 F.3d at 933 ("To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse--such as being less prestigious or less interesting or providing less room for advancement."); see also Pegram, 361 F.3d at 283 ("Circuit precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action.").

Greene argues that his transfer to Kansas City was a demotion and therefore an ultimate employment action. We disagree. Greene's job title and pay were the same in both Kansas City and New Orleans. Furthermore, Greene produced no evidence that his job in Kansas City was objectively worse than his position in New Orleans. To support his argument, Greene points only to his own affidavit, which briefly describes the differences between his duties in New Orleans and Kansas City. Greene avers that in New Orleans he worked on overdue accounts up to and through repossession. However, in Kansas City, he would work on accounts that were only thirty to forty days past due, and then he would forward the accounts on to others. Although Greene claims this would be a step back to an entry level position, he admits that his job in New Orleans was an entry

level position.  Moreover, Greene never refuted DCS's evidence that despite the differences, his duties in Kansas City were the same as they had been in New Orleans.  For example, Jeff Andrew Glazer, manager of the New Orleans Customer Service Department, testified that Greene would not experience a reduction in his duties or responsibilities after transferring to Kansas City. Glazer stated that even if Greene were no longer to handle accounts up to and through repossession, his responsibility level would remain the same because he would be handling more accounts and his duty still would be to cure delinquent accounts.  Thus, Greene failed to show that his transfer was a demotion, and therefore, he did not prove that he suffered an adverse employment decision.  Consequently, Greene failed to establish a prima facie case of retaliation, and the district court correctly granted summary judgment in favor of DCS.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.