# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 24, 2010

No. 08-11115

Charles R. Fulbruge III
Clerk

KIM Y SMITH,

Plaintiff-Appellee

v.

XEROX CORP,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, JOLLY, and WIENER, Circuit Judges.

REAVLEY, Circuit Judge:

Xerox Corporation appeals following a jury verdict in favor of its former employee, Kim Smith, finding that Xerox terminated Smith in retaliation for her filing a complaint with the Equal Employment Opportunity Commission (EEOC), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a). Xerox challenges the jury instructions on a mixed-motive theory of causation, as well as the sufficiency of the evidence. We conclude that the district court instructed the jury on the proper causation standard and that the evidence was sufficient for the jury to assess liability but that the evidence was insufficient to support an award of punitive damages. We therefore

No. 08-11115

AFFIRM the district court's judgment except to vacate the award of punitive damages.

## I.

Kim Y. Smith was employed by Xerox Corporation for approximately 22 years before she was terminated in January 2006. During the time relevant to this case, she worked as an Office Solutions Specialist (OSS), responsible for supporting Xerox dealers, or "agents," who placed and serviced copying equipment in North Texas. For the majority of her employment, Smith received positive evaluations. By all accounts she was a very good employee who only two years before her termination was named to Xerox's prestigious President's Club, an annual award that is bestowed on only the top eight performing employees in the country.

In January 2005 Steve Jankowski took over as manager of Xerox's Central Region, which included the territory assigned to Smith. At the same time, the sales territories within Smith's region were realigned. As a result, Smith's territory and the number of agents that she supported were reduced. The reduction was significant to Smith because the ability of a Xerox OSS to meet sales goals is dependent in part on the number of agents with whom she works. Smith and Jankowski clashed from the beginning over the size of Smith's territory and subsequent problems that Smith had in meeting her sales goals.

Smith alleged in her complaint that upon becoming her manager Jankowski immediately began making negative employment decisions about her based on Smith's gender and age. She contended that while the size of her sales territory was decreased, the size of her sales goals, or "plan," was not adjusted accordingly. She alleged that when she complained about these changes, Jankowski gave her no support or guidance and instead simply insisted that she "make plan." But Smith was unable to meet the goals set for her. She attributed her failure to the unreasonableness of the sales goals, which she believed were not similarly required of other younger or male co-workers.

No. 08-11115

By March 2005, Jankowski indicated to Smith that she was behind in her goals and that he was concerned about Smith "making plan." In June 2005 Jankowski sent Smith a formal warning letter, which outlined various deficiencies in Smith's performance and placed her on a 90-day warning period. The letter indicated that Smith was currently at only 63% of her revenue goals and that she was "below expectations" in several areas. Jankowski later revised the letter to correct certain errors therein and re-started the warning period. The 90-day period was the first step in Xerox's Performance Improvement Process (PIP) and was set to end on October 25, 2005. Smith refused to sign the warning letter because she believed it was inaccurate. Instead, she sought a meeting with Jankowski's supervisor, Jack Thompson, and also complained to a Xerox human resources manager, Joe Villa, all to no avail.

On October 27, 2005, at the conclusion of Smith's warning period, Jankowski placed Smith on a 60-day probationary term, which was to expire on December 28, 2005. Jankowski's letter to Smith informing her of the probation stated in part that Smith had met approximately only 70% of her revenue plan and had also failed in other performance areas. The letter warned Smith that failure to meet a satisfactory performance level, including making up her entire year's shortfall and meeting 100% of her revenue plan, could result in termination of employment at the conclusion of the probationary period, or sooner if there were no evidence of improvement in the early stages of the period.

On November 4, 2005, Smith responded in writing to Jankowski's letter. She agreed that she was not at her plan goals but disagreed with Jankowski's assessment of other performance areas. She contended that the goals set for her did not reflect the "real world sales environment," including the decrease in her territory, and that she was not being treated the same as other employees or given the same amount of time usually offered when someone misses her sales numbers. Smith asked Jankowski to reconsider the length of her time on

3

No. 08-11115

probation. Jankowski indicated on November 8, 2005, that he did not believe he was treating Smith differently from any other employee on the team and that he would not reconsider his position on the length of Smith's probation.

On November 17, 2005, Smith notified Jankowski that she had filed a discrimination charge against Xerox with the EEOC.  Smith charged in her EEOC complaint that Jankowski had placed her in the Performance Improvement Process with the intention of terminating her employment and that he had done so based on her age, gender, and race.  Smith's letter advised Jankowski of the law's prohibition of an employer taking action against an employee in retaliation for filing such charges.

Smith was terminated in January 2006 at the conclusion of her probationary period, at which point she had achieved approximately 74% of her revenue goals.  Smith contends, however, that Jankwoski actually began the termination process much sooner, only days after she filed her EEOC charge, thereby truncating the probationary period in a way contrary to Xerox's established policies and procedures.  For example, the record contains an involuntary termination request form seeking Smith's termination that appears to follow a fax cover sheet to the human resources department dated November 29, 2005, only seven business days after Smith filed her EEOC complaint.[1]

On December 8, 2005, Jankowski sent Smith a written warning in the form of a "letter of concern," contending that Smith had submitted two inaccurate expense reports in October and November.  The letter of concern accused Smith of submitting a reimbursement request for driving 161 business miles on a day she was actually on vacation and of improperly requesting a $54

---

[1] Xerox objected at trial, and continues to argue on appeal, that the fax cover sheet concerned a different document and was apparently placed erroneously in Smith's personnel file immediately before the termination request.  We discuss Xerox's argument in greater detail later, but note that the jury was not required to believe Xerox's explanation of the document.

reimbursement for a car wash for her personal vehicle. Smith withdrew the claim for the car wash reimbursement, stating that although she had washed both her personal and company vehicles on the same day, she could not find the receipt for the company vehicle and had mistakenly included the receipt for her personal vehicle when she submitted the expense report. She also explained that although she was on vacation on the day for which she requested mileage reimbursement, she had also visited a customer and attended a company sponsored conference, and she believed the miles should be considered business miles. Joe Villa testified about the letter of concern that it would violate company policy if Jankowski had sent it before speaking to Smith to get her explanation. When asked if the letter appeared to be evidence of someone lashing out or retaliating against Smith, Villa agreed that the letter was suspicious.

Smith's 60-day probationary period, during which she was expected to meet 100% of her revenue plan, officially ended on December 28, 2005. The involuntary termination request form, which appeared to follow the fax cover sheet dated November 29, 2005, bears a date for Jankowski's signature of January 3, 2006. Villa purportedly signed the document on January 4, 2006. Smith testified that revenue numbers typically are not available, however, until five to ten working days following the conclusion of the month. Xerox submitted Smith's revenue numbers to the EEOC on a form compiled on January 7, 2006, three days *after* Villa signed Smith's termination form. Smith was informed of her termination on January 13, 2006, while her EEOC charge was still pending. She subsequently filed a retaliation charge with the EEOC.

The EEOC issued a right-to-sue letter, and Smith filed the instant lawsuit, alleging that Xerox discriminated against her based on her gender and age and then retaliated against her for filing her EEOC charges, in violation of Title VII. The case proceeded to trial by jury. Over Xerox's objection, the district court

No. 08-11115

concluded that the case had been tried as a mixed-motive retaliation case and instructed the jury on a mixed-motive theory of causation. Xerox argued that the proper instruction should have required Smith to prove but-for causation, but the district court disagreed.

The jury returned a verdict in favor of Xerox on the discrimination charge, finding that Xerox had not discriminated against Smith on the basis of either gender or age. On the retaliation claim, however, the jury found for Smith. It concluded in a special interrogatory that Smith proved her EEOC charge was a motivating factor in Xerox's termination decision. It then found that Xerox failed to show it would have made the same termination decision even if it had not considered Smith's EEOC charge. The jury awarded Smith $67,500 in compensatory damages and $250,000 in exemplary damages. The district court also awarded Smith her attorneys' fees. Xerox moved for judgment as a matter of law, but the court denied the motion.

## II.

Xerox argues that the district court erroneously instructed the jury on the burden of proof by allowing it to find for Smith on her retaliation claim with only "motivating factor" rather than "but-for" causation, thereby improperly shifting the ultimate burden of persuasion to Xerox. In reviewing the jury charge we ask whether the jury charge properly stated the applicable law and, if not, whether the challenged instruction affected the outcome of the case. *Johnson v. Sawyer*.[2]

### *Statutory framework of Title VII and burden shifting*

In order to determine whether the district court gave a proper instruction on the law, we must review what the law is in a Title VII retaliation case. Our

---

[2] 120 F.3d 1307, 1315 (5th Cir. 1997).

No. 08-11115

task is complicated by the Supreme Court's recent decision in *Gross v. FBL Financial Services, Inc.*,[3] to which we turn after examining the law up until now.

Title VII prohibits both discrimination[4] and retaliation[5] "because" of protected factors. In *Price Waterhouse v. Hopkins*, the Supreme Court established in the context of a Title VII discrimination case that a plaintiff could show that discrimination was "because of" an impermissible factor by showing that factor to be a "motivating" or "substantial" factor in the employer's

---

[3] 129 S. Ct. 2343 (2009).

[4] Title VII provides in relevant part:

It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

[5] The statute provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

decision.[6]  Once the plaintiff made this showing, the Court said, the burden of persuasion would shift to the defendant, who could avoid liability by showing from a preponderance of evidence that it would have taken the same employment action even without consideration of the prohibited factor.[7]

The Court's "motivating factor" approach differed from the usual burden-shifting framework of *McDonnell Douglas Corp. v. Green*,[8] which requires the plaintiff, after making a *prima facie* case followed by the employer's articulation of a nondiscriminatory reason for its action, to show that the employer's stated reason is a mere pretext.[9]  Whereas pretext cases involve discernment of the true reason for the employer's action, which is either legal or illegal, motivating factor cases applying the *Price Waterhouse* test involve employment decisions based on multiple factors, or mixed motives, at least one of which was illegitimate and prohibited by statute and one of which may have been legitimate.[10]

In 1991, Congress amended Title VII partially in response to *Price Waterhouse*.[11]  It explicitly codified the holding that a Title VII discrimination plaintiff could show an unlawful employment practice by demonstrating that a

---

[6] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S. Ct. 1775, 1795 (1989) (plurality opinion); *id.* at 259–60, 109 S. Ct. at 1795 (White J., concurring); *id.* at 276–77, 109 S. Ct. at 1804 (O'Connor, J., concurring).

[7] *Id.*

[8] 411 U.S. 792, 93 S. Ct. 1817 (1973).

[9] *See, e.g., McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007).  In a retaliation case, a prima facie case is shown if the plaintiff establishes that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."  *Id.* at 557.

[10] *See Price Waterhouse*, 490 U.S. at 260, 109 S. Ct. at 1796 (White, J., concurring) (citing *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 400 n.5, 103 S. Ct. 2469, 2473 n.5 (1983)).

[11] *See* Pub. L. No. 102-166, 105 Stat. 1071, 1075–76 (1991).

No. 08-11115

prohibited factor was a "motivating factor" in the employment decision.[12]  But it also limited the remedy if the employer shows that it would have taken the same action without the prohibited factor.[13]

We have previously held that the allocation of the burden of proof in a Title VII retaliation case depends on the nature of the plaintiff's evidence. *Fierros v. Tex. Dep't of Health*.[14]  We said that if the plaintiff attempts to establish causation by circumstantial evidence, the burden shifting approach of *McDonnell Douglas* applies and the plaintiff must prove "but-for" causation.[15]

---

[12] Congress achieved this end by adding 42 U.S.C. § 2000e-2(m), which provides:

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

[13] In this regard, 42 U.S.C. § 2000e-5(g) provides in relevant part:

On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

§ 2000e-5(g)(2)(B). Although *Price Waterhouse* permitted a complete defense by the employer upon showing that the employer would have taken the same employment action without considering the improper factor, § 2000e-5(g) restricted this defense by providing a limited remedy to plaintiffs.  *See Garcia v. City of Houston*, 201 F.3d 672, 676 (5th Cir. 2000) ("If an employer can demonstrate that it would have taken the same action in the absence of the impermissible motivating factor, the plaintiff's relief is limited to injunctive and declaratory relief, costs, and attorneys' fees.").

[14] 274 F.3d 187, 191 (5th Cir. 2001).

[15] *Id.*

If the plaintiff presents direct evidence of retaliation, however, the *Price Waterhouse* mixed-motive approach applies, and the plaintiff may, by showing a motivating factor, shift to the employer the burden of establishing that it would have made the same decision without that factor.[16]

The Supreme Court dispelled the notion that direct evidence was required to obtain a mixed-motive jury instruction in a Title VII *discrimination* case when it decided *Desert Palace, Inc. v. Costa*.[17] In *Desert Palace*, the Court concluded that Congress's addition of § 2000e-2(m) allowing for a motivating factor test in a discrimination case, and its failure in that section to require a heightened burden of proof, left little doubt that there was no special evidentiary showing required in a Title VII discrimination case.[18]

Xerox argued in the district court that *Desert Palace* is inapplicable to a Title VII *retaliation* case, and that the district court should not give a mixed-motive instruction because Smith did not present direct evidence in support of her claims. Xerox repeats this argument in its appellate brief. Before addressing Xerox's argument, however, we must first consider the Supreme Court's decision in *Gross*, which was decided after briefing but before oral argument in this case, and determine whether the mixed-motive framework is still applicable to Title VII retaliation cases.

### Mixed-motive framework in Title VII retaliation cases

In *Gross v. FBL Financial Services., Inc.*, the Supreme Court granted certiorari to decide whether direct evidence of age discrimination is necessary to obtain a mixed-motive jury instruction in a case brought under the Age

---

[16] *Id.* at 192; *see also Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003).

[17] 539 U.S. 90, 92, 123 S. Ct. 2148, 2150 (2003).

[18] *Id.* at 98–99, 123 S. Ct. at 2153–54.

Discrimination in Employment Act (ADEA).[19]  The Court did not answer that question, however, because it held that the kind of mixed-motive jury instruction proper under *Price Waterhouse* in a Title VII case was never proper in an ADEA discrimination case.  Its reasoning was based on the text of the statute and a comparison of Congress's approach to Title VII and the ADEA.

First, the Court reasoned that the text of the ADEA differed from the text of Title VII; unlike § 2000e-2(m) in Title VII, Congress did not authorize motivating factor claims in the ADEA.[20]  Second, the Court noted that when Congress amended Title VII in 1991 adding § 2000e-2(m), it had also amended the ADEA in several ways yet chose not to include a similar motivating factor provision.[21]  The Court presumed that Congress acted intentionally by omitting motivating factor in age discrimination cases.[22]  The Court concluded, therefore, that a plaintiff in an ADEA case "retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."[23]

We recognize that the *Gross* reasoning could be applied in a similar manner to the instant case.  The text of § 2000e-2(m) states only that a plaintiff proves an unlawful employment practice by showing that "race, color, religion, sex, or national origin was a motivating factor."[24]  It does not state that *retaliation* may be shown to be a motivating factor.  Moreover, although Congress amended Title VII to add § 2000e-2(m) in 1991, it did not include

---

[19] 129 S. Ct. at 2346.

[20] *Id.* at 2349.

[21] *Id.*

[22] *Id.* ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.").

[23] *Id.* at 2351.

[24] 42 U.S.C. § 2000e-2(m).

No. 08-11115

retaliation in that provision.  These considerations are, of course, similar to the Supreme Court's reasoning in *Gross*, and Xerox understandably urged at oral argument that *Gross* dictates the same conclusion here, i.e.*,* a Title VII retaliation plaintiff, like an ADEA discrimination plaintiff, may not obtain a motivating factor jury instruction and must instead prove that retaliation was the but-for cause for the adverse employment action.  We believe, however, that such a simplified application of *Gross* is incorrect.[25]

To state the obvious, *Gross* is an ADEA case, not a Title VII case.  The *Gross* Court cautioned that when conducting statutory interpretation, courts "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination."[26]  The Court's comparison of Title VII with the ADEA, and the textual differences between those two statutory schemes, led it to conclude that Title VII decisions like *Price Waterhouse* and *Desert Palace* did not govern its interpretation of the ADEA.[27]  But we *are* concerned with construing Title VII, albeit in the retaliation context, so those decisions, along with our own precedent recognizing the application of mixed-motive analysis in Title VII retaliation cases, are not unimportant.[28]

_____

[25] *But see Fairley v. Andrews*, 578 F.3d 518, 525–26 (7th Cir. 2009) (characterizing *Gross* as holding that unless a statute provides otherwise a plaintiff must demonstrate but-for causation "in all suits under federal law"), *petition for cert. filed* 78 U.S.L.W. 3375 (U.S. Dec. 21, 2009) (No. 09-745).

[26] *Gross*, 129 S. Ct. at 2349 (internal quotation marks and citation omitted).

[27] *Id.* at 2349 & n.2.

[28] The dissent characterizes as "lame" our distinction between age discrimination cases under the ADEA and retaliation cases under Title VII.  *See* Dissenting op. at 2.  If *Gross* teaches anything, however, it is that Title VII and the ADEA are distinct statutory schemes.  As even the Supreme Court found cases under the Title VII regime inapplicable to its consideration of the ADEA, we think our distinction is hardly the equivalent of the difference between a red car and green car in a traffic accident.  *See id.*  The dissent also contends that the Seventh Circuit has twice explained, in *Fairley* and *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961–62 (7th Cir. 2010), that a plaintiff must prove but-for causation in all suits under federal law absent a contrary statutory provision.  Dissenting op. at 2.  We recognize

12

No. 08-11115

In other words, the decision before us is how to proceed in light of *Price Waterhouse*, which specifically provided that the "because of" language in the context of Title VII authorized the mixed-motive framework, and *Gross*, which decided that the same language in the context of the ADEA meant "but-for," but also refused to incorporate its prior Title VII decisions as part of the analysis. We believe that under these circumstances, the *Price Waterhouse* holding remains our guiding light. Although the dissent would extend *Gross* into the Title VII context, we think that would be contrary to *Gross*'s admonition against intermingling interpretations of the two statutory schemes.[29]

It is not our place, as an inferior court, to renounce *Price Waterhouse* as no longer relevant to mixed-motive retaliation cases, as that prerogative remains always with the Supreme Court. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*[30] The Supreme Court recognized that Title VII and the ADEA are

---

that the Seventh Circuit has taken a broad view of *Gross*, but in both *Serwatka*, 591 F.3d at 958, and a Title VII retaliation case cited therein, *McNutt v. Bd. of Trs. of the Univ. of Ill.*, 141 F.3d 706, 707 (7th Cir. 1998), the court was confronted with the effect of the remedy provision of the 1991 amendments to the Civil Rights Act, § 2000e-5(g)(2)(B), when the jury found that an improper factor was a motivating reason for the employment decision but that the defendant employer had proven its affirmative defense. As we explain below, irrespective of the remedies available under the 1991 amendments under those circumstances, we feel bound by *Price Waterhouse* on the issue whether in a Title VII retaliation case the motivating factor framework may be submitted to the jury in the first place.

[29] *See Gross*, 129 S. Ct. at 2349 & n.2.

[30] 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–22 (1989) (stating that "the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions"); *see also Hopwood v. State of Tex.*, 84 F.3d 720, 722 (5th Cir. 1996) (Politz, C.J., and King, Wiener, Benavides, Stewart, Parker, and Dennis, JJ., dissenting from the denial of rehearing en banc) ("The Supreme Court has left no doubt that as a constitutionally inferior court, we are compelled to follow faithfully a directly controlling Supreme Court precedent unless and until the Supreme Court itself determines to overrule it. We may not reject, dismiss, disregard, or deny Supreme Court precedent, even if, in a particular case, it seems pellucidly clear to litigants, lawyers, and lower court judges alike that, given the opportunity, the Supreme Court would overrule its precedent." (footnote omitted)).

13

No. 08-11115

"materially different with respect to the relevant burden of persuasion."[31] Because the Court recognized this difference but was not presented in *Gross* with the question of how to construe the standard for causation and the shifting burdens in a Title VII retaliation case, we do not believe *Gross* controls our analysis here.

As noted above, we have previously recognized that the motivating factor analysis and burden shifting scheme of *Price Waterhouse* may be applicable in Title VII mixed-motive retaliation cases, although we have held that direct evidence is necessary to shift the burden to the defendant.[32] We are bound by our circuit precedent, as we may not "'overrule the decision of a prior panel unless such overruling is *unequivocally* directed by controlling Supreme Court precedent.'" *Cain v. Transocean Offshore USA, Inc.*[33] Although Title VII and *Price Waterhouse* provided the backdrop for its decision, the *Gross* Court made clear that its focus was on ADEA claims.[34] We conclude therefore that *Gross* did not overrule our prior decisions addressing Title VII retaliation.[35] Because we

---

[31] *Gross*, 129 S. Ct. at 2348.

[32] *See Fabela*, 329 F.3d at 415; *Fierros*, 274 F.3d at 192.

[33] 518 F.3d 295, 300 (5th Cir. 2008) (quoting *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1306 (5th Cir. 1991) (emphasis added in *Cain*)).

[34] *See Gross*, 129 S. Ct. at 2349 ("This Court has never held that this burden-shifting framework [of *Price Waterhouse*] applies to ADEA claims. And, we decline to do so now."). The dissent insists that *Gross* has changed our law because *Gross* explained that the 1991 amendments to Title VII "should be read as *limiting* the mixed motive analysis to the statutory provision under which it was codified—Title VII *discrimination* only." Dissenting op. at 3 (emphasis in original). The *Gross* Court made no such broad pronouncement. The Court held that the 1991 amendments to Title VII confirmed that the *Price Waterhouse* burden-shifting framework could not be transferred into the ADEA statutory scheme. *Gross*, 129 S. Ct. at 2351–52 & n.5. The Court did not address the continuing effect of *Price Waterhouse* on Title VII retaliation.

[35] *See also Fener v. Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund (Local 66)*, 579 F.3d 401, 408 (5th Cir. 2009) ("[W]hen the Supreme Court discusses a general legal standard and cites its earlier caselaw on point, it does not necessarily overrule

14

believe that *Gross* does not unequivocally control whether a mixed-motive jury instruction may be given in a Title VII retaliation case, we must continue to allow the *Price Waterhouse* burden shifting in such cases unless and until the Supreme Court says otherwise. Therefore, we proceed to consider whether the direct evidence requirement of our Title VII retaliation precedent remains valid. In light of *Desert Palace*, we conclude that it does not.[36]

### *Direct or circumstantial evidence*

The *Desert Palace* Court held that, in addition to the language of § 2000e-2(m), a heightened showing is not required by direct evidence because the Court was persuaded by Title VII's silence with respect to the type of evidence required.[37] The Court noted that Congress has specifically provided for a heightened standard of proof in other statutes and clearly knows how to require such a showing.[38] The Court also noted that the long-established rule in civil litigation requires a plaintiff "to prove his case 'by a preponderance of the evidence' . . . using 'direct or circumstantial evidence.'"[39] Furthermore, the Court noted that the reason for treating circumstantial and direct evidence the same is deeply rooted in the notion that circumstantial evidence may often be more

---

intervening decisions of the lower courts.").

[36] In *Septimus v. Univ. of Houston*, 399 F.3d 601, 607 n.7 (5th Cir. 2005), we left open the question of the standard for causation in mixed-motive retaliation cases because the parties there agreed the case was a pretext case. Because, as discussed below, the issue whether the instant matter is a mixed-motive or pretext case is disputed, we must resolve both questions.

[37] *Desert Palace*, 539 U.S. at 98–99, 123 S. Ct. at 2153–54.

[38] *See id.* at 99, 123 S. Ct. at 2154 (citing 8 U.S.C. § 1158(a)(2)(B) and 42 U.S.C. § 5851(b)(3)(D)).

[39] *Id.* (quoting *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3, 103 S. Ct. 1478 (1983)).

No. 08-11115

persuasive.[40] Moreover, even in criminal cases, where a conviction requires proof beyond a reasonable doubt, circumstantial evidence is sufficient to support a conviction.[41] Finally, the Court observed that there was no other circumstance evident where a litigant is restricted to the presentation of direct evidence "absent some affirmative directive in a statute."[42]

All of these considerations apply with equal force to litigants in Title VII retaliation cases, and we conclude from these factors and the text of Title VII that the kind of proof necessary for either discrimination or retaliation claims should be the same. The specific text of the Title VII retaliation provision, § 2000e-3(a), prohibits an employer from discriminating "because" the employee has, *inter alia*, made a charge against the employer.[43] The statute provides no indication of the type of evidentiary showing necessary to prove the retaliation

---

[40] *Id.* at 99–100; *see also Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S. Ct. 6, 11 (1960) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."). We have also followed the rule, in a variety of other contexts, that circumstantial evidence is sufficient to prove a plaintiff's case. *See, e.g.*, *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 392 (5th Cir. 1996) (plaintiff alleging conspiracy under the Sherman Act "may rely on either direct or circumstantial evidence"); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 795 (5th Cir. 1983) (for proof of secondary meaning in a trademark dispute "[b]oth direct and circumstantial evidence may be relevant and persuasive on the issue"), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 125 S. Ct. 542 (2004); *Merchants Truck Line, Inc. v. NLRB*, 577 F.2d 1011, 1014 (5th Cir. 1978) ("Because direct proof of motive is rarely possible, the General Counsel has been forced to rely on circumstantial evidence, which may be sufficient to carry his burden."); *Movible Offshore Co. v. Ousley*, 346 F.2d 870, 874 (5th Cir. 1965) (rejecting defendant's argument in a negligence case that jury should have been instructed to evaluate circumstantial evidence differently from direct evidence where "[t]he appellant has not cited us to any authority requiring a special instruction on circumstantial evidence in civil cases and we have found none"); *see also* 1A J. WIGMORE, WIGMORE ON EVIDENCE § 26, at 961 (Tillers rev. 1983) ("that circumstantial evidence may be as persuasive and as compelling as testimonial [or direct] evidence, and sometimes more so, is now generally accepted").

[41] *Desert* Palace, 539 U.S. at 100, 123 S. Ct. at 2154.

[42] *Id.*

[43] *See* 42 U.S.C. § 2000e-3(a).

16

claim. Because the text of § 2000e-3(a) neither requires nor prohibits a specific evidentiary showing, construing it to include the mixed-motive framework to be shown by circumstantial evidence does no violence to the statute.[44] Title VII does not affirmatively require direct evidence from a plaintiff, whether in a discrimination or retaliation context, and we can see no basis for requiring a heightened evidentiary showing in order to obtain a motivating factor jury instruction predicated only on the theory of liability alleged in the complaint (discrimination versus retaliation). The view that no special evidentiary showing is required absent a contrary statutory command is consistent with the view of at least four members of the Supreme Court in *Gross*, who, based on the analysis of *Desert Palace*, answered the question that the majority did not.[45] We therefore hold that to the extent we have previously required direct evidence of retaliation in order to obtain a mixed-motive jury instruction in a Title VII case, our decisions have been necessarily overruled by *Desert Palace*.[46] Smith therefore was not required to present direct evidence of retaliation in order to receive a mixed-motive jury instruction.[47]

---

[44] *See Richardson v. Monitronics Int'l Inc.*, 434 F.3d 327, 334 (5th Cir. 2005) (holding that mixed-motive framework applies, and direct evidence is not required, in a claim for retaliation under the Family Medical Leave Act (FMLA) where, *inter alia*, text of the FMLA "neither countenances nor prohibits the mixed-motive analysis").

[45] *Gross*, 129 S. Ct. at 2358 (Stevens, J., dissenting) (stating that "[o]ur analysis in *Desert Palace* applies with equal force to the ADEA" and noting that "no language in the ADEA imposes a heightened direct evidence requirement"). This court has also previously read *Desert Palace* to mean that direct evidence is not required in the face of statutory silence. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 & n.8 (5th Cir. 2004).

[46] Although the dissent suggests that we are being inconsistent by applying *Desert Palace* but not *Gross* to Title VII retaliation cases, *see* Dissenting op. at 2 n.1, we believe that where there is reasonable debate about the applicability of *Gross* we must follow the submission of *Price Waterhouse* along with the clear evidentiary holding of *Desert Palace*.

[47] *See Hunter v. Valley View Local Schs.*, 579 F.3d 688, 692 n.2 (6th Cir. 2009) (stating that the *Price Waterhouse* burden shifting standard "depends not on the type of evidence presented (direct versus circumstantial), but on the type of claim brought (single-motive

No. 08-11115

*Was this a mixed-motive case?*

Xerox argues, nevertheless, that the mixed-motive jury instruction was erroneous because this was not tried as a mixed-motive case. It reasons that in a mixed-motive case the employee must concede that discrimination was not the sole reason for her termination, but that Smith never conceded Xerox had a legitimate reason for discharging her. We are unpersuaded by this argument and do not believe such a concession is necessary.

Xerox's argument is based on our statement in *Richardson* that "[t]he mixed-motive framework applies to cases in which the employee concedes that discrimination was not the *sole* reason for her discharge, but argues that discrimination was *a* motivating factor in her termination."[48] This statement articulated the mixed-motive framework generally and was not meant to enumerate the required elements of a mixed-motive case.[49]

Requiring the plaintiff to concede at trial the legitimacy of the employer's stated reason for the discharge is contrary to the purpose of the mixed-motive framework. As we have stated, "[a]lthough *Price Waterhouse* can be characterized as a method to prove discrimination, the mixed-motives theory is probably best viewed as a defense for an employer."[50] This "defense" allows the

---

versus mixed-motive").

[48] *Richardson*, 434 F.3d at 333 (emphasis in original).

[49] Xerox also cites our decision in *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 595 (5th Cir. 2007). The plaintiff there raised a mixed-motive theory for the first time on appeal from the district court's grant of summary judgment. We refused to consider the argument because it was not raised in the district court, and we merely indicated in dicta that the plaintiff's failure to concede, even for argument's sake, that the employer had a legitimate reason for its action reinforced that the district court had no opportunity to address a mixed-motive claim. *See id.*

[50] *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995); *see also Price Waterhouse*, 490 U.S. at 246, 109 S. Ct. at 1788 ("[T]he employer's burden is most appropriately deemed an affirmative defense."); *Richardson*, 434 F.3d at 333 (stating that for mixed-motive cases "the employer's burden 'is effectively that of proving an affirmative

18

No. 08-11115

employer—once the employee presents evidence that an illegitimate reason was a motivating factor, even if not the sole factor, for the challenged employment action—to show that it would have made the same decision even without consideration of the prohibited factor. But an employee who is discharged for perceived discriminatory reasons will surely always believe the employer lacked a legitimate reason for the termination, and the mixed-motive framework does not require the plaintiff to concede that the employer's stated reason was legitimate. That is why we have juries.

As recognized by the plurality in *Price Waterhouse*, a case need not be "correctly labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning in the District Court" because the distinction often will not be known to the plaintiff prior to discovery.[51] Instead, "[a]t some point in the proceedings, of course, the *District Court* must decide whether a particular case involves mixed motives."[52] As explained by the en banc Ninth Circuit decision in *Desert Palace*, "[o]nce at the trial stage, the plaintiff is required to put forward evidence of discrimination 'because of' a protected characteristic. After hearing both parties' evidence, the district court must decide what legal conclusions the evidence could reasonably support and instruct the jury accordingly. . . . [T]he choice of jury instructions depends simply on a determination of whether the evidence supports a finding that just one–or more than one–factor actually motivated the challenged decision." *Costa v. Desert Palace, Inc.*[53] Put another

_____

defense'" (citation omitted)).

[51] *Price Waterhouse*, 490 U.S. at 247 n.12, 109 S. Ct. at 1789 n.12.

[52] *Id.* (emphasis added).

[53] 299 F.3d 838, 856 (9th Cir. 2002) (en banc) (footnote omitted); *see also Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir. 1999) ("A mixed motive instruction is therefore appropriate in any case where the evidence is sufficient to allow a trier to find both forbidden and permissible motives." (internal quotation and citation omitted)).

19

way, if the district court has before it substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action, the court may give a mixed-motive instruction.

That is our precedent, but the reality is that the defendant will always prefer a pretext submission that requires the plaintiff to prove that there was no legitimate motivation (but-for) while the plaintiff will always prefer a mixed-motive submission with the burden on the defendant. Illogical or not, that is the law we follow.

Here, the district court determined that this was a mixed-motive case. Smith contended that she was terminated for discriminatory reasons, but Xerox insisted that Smith was a poor performing employee who failed to "make plan." Smith agreed with Jankowski that she failed to "make plan," but she contended that her sales goals were unreasonable and that her termination was based on her age, her gender, and retaliation for her EEOC complaint. We see no error by the district court in submitting this case to the jury as a mixed-motive case based on the evidence presented at trial.

Xerox presented undisputed evidence showing that in 2005 Smith was behind in her plan numbers by a wide margin prior to her warning and probationary periods, and she failed to make up the shortfall by the end of the year. It also presented evidence that several agents that Smith supported complained about her product and technical knowledge and her ability to add value to their business. There was also testimony from Smith's fellow employees who said Smith was argumentative and negative on conference calls with Jankowski. These employees also testified that Jankowski was a tough but fair manager who was results and process oriented. Taken together, this evidence *could* support a finding by the jury that Xerox had a legitimate reason for terminating her.

No. 08-11115

We emphasize *could* because there was also competing evidence that Jankowski could have also improperly considered Smith's EEOC charge when seeking her termination. In other words, in addition to evidence that Jankowski naturally would demand that Smith meet high standards, the failure of which could lead to adverse consequences, there was also evidence from which to infer that Smith's EEOC charge was a motivating factor in the termination decision. Smith's termination form was arguably faxed to the human resources department only days after Smith filed the EEOC charge. Jankowski then issued the letter of concern only a few weeks after the EEOC charge. Villa, the human resources manager, agreed that the letter of concern could be viewed as retaliation by Jankowski if Jankowski failed to speak with Smith before issuing it, which Smith contended he failed to do. There is also the fact that Xerox policies permit, and arguably encourage, lesser actions such as reassignment or demotion, rather than termination, for an employee with a tenure and track record as lengthy as Smith's. Xerox Human Resources personnel agreed at trial that demotion or reassignment ordinarily could be considered, yet Smith was terminated after a single poor performing year, only two years removed from being among the top performing employees in the country. We conclude from this evidence that the district court had before it substantial evidence of both legitimate and illegitimate motives for Smith's termination and properly concluded that this was a mixed-motive case. The court therefore properly instructed the jury on the mixed-motive framework. We therefore turn to Xerox's claims concerning the sufficiency of the evidence.

### III.

### *Sufficiency of the evidence*

In the unpublished section of our opinion we explain the holding that the evidence was sufficient to support Smith's claim of retaliation.

21

No. 08-11115

*Punitive damages*

Xerox argues that the evidence was insufficient to support the jury's award of punitive damages. We agree and conclude that the jury's award must be vacated to the extent of the punitive amount.

Punitive damages in a Title VII case are recoverable if the plaintiff shows that the defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual."[54] This standard is higher than the showing necessary for compensatory damages. *Kolstad v. Am. Dental Ass'n*.[55] We have cautioned that "not every sufficient proof of pretext and discrimination is sufficient proof of malice or reckless indifference." *Hardin v. Caterpillar, Inc*.[56] Nevertheless, a plaintiff need not show the defendant's conduct was especially egregious, as "[t]he availability of punitive damages turns on the defendant's state of mind, not the nature of the defendant's egregious conduct." *EEOC v. E.I. Du Pont de Nemours & Co*.[57] This is a subjective inquiry and focuses on whether the employer "at least discriminate[d] in the face of a perceived risk that its actions will violate federal law."[58] For example, an employer that is unaware of the relevant federal prohibition or that acts with a justifiable belief that its discrimination is lawful will not be liable for punitive damages.[59] Moreover, under a "good faith" exception, an employer will not be liable for punitive damages based on the discriminatory actions of its managerial

---

[54] 42 U.S.C. § 1981a(b)(1).

[55] 527 U.S. 526, 534, 119 S. Ct. 2118, 2124 (1999) ("Congress plainly sought to impose two standards of liability–one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award.").

[56] 227 F.3d 268, 270 (5th Cir. 2000).

[57] 480 F.3d 724, 732 (5th Cir. 2007) (citing *Kolstad*, 527 U.S. at 535, 119 S. Ct. at 2124).

[58] *Kolstad*, 527 U.S. at 536, 119 S. Ct. at 2125.

[59] *Id.* at 537, 119 S. Ct. at 2125.

No. 08-11115

agents if those actions are contrary to the employer's good faith efforts to comply with Title VII. *See Hatley v. Hilton Hotels Corp.*[60]

Neither party in this case addresses the punitive damages issue in terms of the subjective inquiry framework, i.e., whether the evidence supports a conclusion that Xerox's decision makers were both aware of Title VII's prohibitions against retaliation and were aware that the decision to terminate Smith risked violating federal law. Xerox simply asserts that, for the same reasons it believes the evidence was insufficient to show that the termination occurred because of Smith's EEOC complaint, there was insufficient evidence that it acted maliciously or recklessly.[61]

In response, Smith relies on much of the same evidence discussed above allowing an inference that retaliation was a motivating factor in her termination as support for the jury's finding of malice or reckless indifference. In this regard, she points to Xerox's failure to follow its written polices and procedures, presumably meaning Xerox's PIP policies and the attendant requirements for documentation. She also asserts that Joe Villa, as a human resources manager, did not participate in the investigation of her EEOC complaint despite company policy to the contrary, and he did not review her personnel file prior to his deposition in this case. She further asserts that Xerox claimed during the course of this litigation to have lost relevant evidence, including the laptop computers used by her and Jankowski.

We have noted that there is no "useful litmus for marking the point at which proof of violation sufficient to impose liability becomes sufficient to also

---

[60] 308 F.3d 473, 477 (5th Cir. 2002) (citing *Kolstad*, 527 U.S. at 545, 119 S. Ct. at 2118).

[61] In its post-judgment motion for judgment as a matter of law in the district court, Xerox arguably attempted to assert the "good faith" exception to punitive damages. Because it fails to make any similar argument on appeal, however, that issue is deemed waived, and we do not consider it. *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 594 (5th Cir. 2006) (arguments not raised in appellant's opening brief are waived).

No. 08-11115

support a finding of malice or reckless indifference."[62]  But based on our review of the evidence, we are not convinced that such a threshold has been met in this case.  Smith's arguments in support of the punitive damages focus on the alleged egregiousness of Xerox's conduct rather than the subjective state of mind of its managers.  Although egregious or outrageous conduct can support an inference of "evil motive,"[63] that showing is not present here.  For example, despite Smith's focus on the disciplinary policies and procedures, Smith was placed in the disciplinary process long before she filed her EEOC complaint.  Smith may have disagreed with the allegations of the letters placing her on the 90- and 60-day warning and probation periods, but the letters described in detail management's perceived deficiencies in Smith's performance and Smith's need to meet her sales goals.  It is undisputed that Smith did not do so, or that the letter placing her on probation warned that she could be terminated.   There was also evidence, although contested by Smith, of contemporaneous complaints by Xerox agents about Smith's product knowledge and level of support.

In light of the competing evidence that impugned Smith's performance, we cannot say that the evidence supports a finding that Xerox managers acted with malice or reckless indifference to the possibility that her termination could violate federal law.  We therefore hold that, although the evidence was sufficient to find that retaliation was a motivating factor in the termination, the punitive damages award based on malice or reckless indifference to federal rights cannot stand. That portion of the district court's judgment must be vacated.[64]

---

[62] *Hardin*, 227 F.3d at 270.

[63] *Kolstad*, 527 U.S. at 538, 119 S. Ct. at 2126.

[64] Xerox presents as a separate issue in its brief the argument that the district court erroneously denied its motion for a new trial.  Its arguments merely reiterate the same points it makes in support of its argument that the district court erroneously denied its motion for judgment as a matter of law.  Because our conclusions above adequately dispose of all of Xerox's issues, we need not further address its argument for a new trial.

24

No. 08-11115

The district court's judgment is affirmed but modified to vacate the punitive damages award.

AFFIRMED as MODIFIED.

No. 08-11115

E. GRADY JOLLY, Circuit Judge, Dissenting:

For the following two reasons I respectfully dissent. First, the majority effectively creates an unnecessary split in the circuits by failing properly to apply the Supreme Court's ruling in *Gross v. FBL Financial Services, Inc.* As the Seventh Circuit has correctly reasoned, without statutory language indicating otherwise, the mixed-motive analysis is no longer applicable outside of Title VII discrimination, and consequently does not apply to this retaliation case. Second, the majority errs in treating this case as a mixed-motive case. This case is pretext, pure and simple: it was tried as a pretext case and relies on pretext evidence.

I.

In *Gross*, the Supreme Court held, in the context of the ADEA, that the "ordinary meaning" of the statutory words "because of," which is the specific language in the discrimination statute before us, requires a showing that the adverse employment action would not have occurred but-for the prohibited discriminatory motive. 129 S. Ct. 2343, 2350 (2009). The Court went on to hold that unless there is a statutory indication to the contrary, this but-for showing—not a mere showing of *a* discriminatory motive in combination with legal motives—must be made *by the plaintiff. Id.* at 2351. Thus, applying the law as set out in *Gross*, to prevail Smith must show more than she has shown here—merely that discrimination was a *factor* in her discharge; she must show that she would never have been discharged but for the illegal motive of Xerox; that is, she would have kept her job notwithstanding her alleged poor performance. Stated still another way, Smith cannot prevail by simply showing that illegal discrimination was only one of a combination of reasons that resulted in her discharge.

In its treatment of *Gross*, the majority acknowledges that the statutory language in this Title VII retaliation case is "because" and that "the *Gross*

26

No. 08-11115

reasoning could be applied . . . to the instant case." Maj. op. at 11. In my view, by any fair standard the majority *must* apply it in this case. The majority disagrees, however, asserting the lame distinction that, although the language is identical, *Gross* was an age discrimination case under the ADEA and the case today is a retaliation case under Title VII. Given the uniform principle set out in *Gross*, the majority's distinction is the equivalent of saying that a principle of negligence law developed in the wreck of a green car does not apply to a subsequent case because the subsequent car is red—a meaningless distinction indeed. As the Seventh Circuit has *twice* explained, after *Gross*, "unless a statute . . . provides otherwise, demonstrating but-for causation is part of the plaintiff's burden *in all suits under federal law*." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010) (emphasis added) (ADA) (citing *Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009) (42 U.S.C. § 1983)).[1]

The majority also focuses on the Supreme Court's admonition in *Gross* not "to apply rules applicable under one statute to a different statute without careful

---

[1] In *Serwatka* an employee sued her former employer under the Americans with Disabilities Act, alleging she was discharged because her employer considered her disabled. The jury returned a mixed-motive verdict in favor of the employee and the district court awarded various forms of relief. On appeal, the employer challenged whether the relief afforded by the district court was permissible under the ADA. The Seventh Circuit found that, in the light of *Gross*, the predicate question of "the applicability of the mixed-motive framework [was] the only argument that [it] need[ed] to address." 591 F.3d at 961. The court went on to conclude that:

> Although the *Gross* decision construed the ADEA, the importance that the court attached to the express incorporation of the mixed-motive framework into Title VII suggests that when another anti-discrimination statute lacks comparable language, a mixed-motive claim will not be viable under that statute.

*Id.* at 961. Because "[t]here is no provision in the governing version of the ADA akin to Title VII's mixed-motive provision," the Seventh Circuit concluded motivating factor causation is not available in the ADA and plaintiffs carry the burden of demonstrating but-for causation in every case. *Id.* at 962.

and critical examination." *Gross*, 129 S. Ct. at 2349 (internal quotation marks and citation omitted). The majority reads only the first half of this statement without undertaking the "careful and critical examination" as instructed by the Court; instead, it opts for the perfunctory ADEA–Title VII distinction identified above. A careful and fair consideration of the principles underlying the decision in *Gross* would require the majority to grapple with two realities that mirror the very basis for the decision in *Gross*: (1) Title VII's retaliation section, at issue here, lacks the provision of Title VII's discrimination section that allows mixed-motive cases, and (2) Congress neglected, in 1991, to provide for motivating factor causation in Title VII retaliation even though it amended Title VII in other ways. The majority would have to *explain*, not gloss over, why these differences between Title VII's retaliation provision and Title VII's discrimination provision—differences that were determinative in *Gross*—are now immaterial in resolving this case involving identical language and the same absence of a proviso authorizing mixed-motive claims. It is only by *avoiding* a "careful and critical examination" that the majority concludes that *Gross* does not control our analysis today.

The majority can only further argue that our pre-*Gross* precedent controls our analysis. But it could hardly be clearer that our prior precedent is predicated on an interpretation of Congress's 1991 amendments that was rejected as plainly wrong by the Court in *Gross*.[2] Before *Gross*, the Supreme Court had interpreted the words "because of" to "to condemn even those decisions based on a mixture of legitimate and illegitimate considerations," *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989), and we interpreted Congress's 1991 amendments as approving of this mixed-motive analysis

---

[2] I cannot help but observe that the majority is more than willing to rely on the broad language of *Desert Palace* to extend its application from Title VII *discrimination* to Title VII *retaliation*, but balks at applying a similar treatment to the broad language in *Gross*.

generally, even though, by their terms, the amendments were limited to Title VII *discrimination*. We relied on this interpretation in recognizing the mixed-motive analysis in other statutory provisions using the "because of" language, including Title VII retaliation. *See Fabela v. Socorro Independent School Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (Title VII retaliation); *see also Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995) (permitting mixed-motive causation in ADEA claims), *abrogated by Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2351-52 (2009).

But the Supreme Court, in *Gross*, has now rejected this interpretation of the 1991 amendments and in doing so has changed *our* law. The Supreme Court explained that the "careful[ly] tailor[ed]" amendments made to Title VII in 1991 should be read as *limiting* the mixed-motive analysis to the statutory provision under which it was codified—Title VII *discrimination* only, which excludes *retaliation*, the claim here. *Gross*, 129 S. Ct. at 2351 n.5.[3] As the Supreme Court admonished, to read the 1991 amendments as generally blessing the *Price Waterhouse* analysis would "ignore Congress' decision" to provide motivating factor causation in only specific types of cases, not in all cases. *Id.* at 2349. The "because of" language requires a plaintiff to demonstrate but-for causation. This is the standard that claimants under Title VII's retaliation provision must meet in the post-*Gross* world. There is no reason to dismiss this Supreme Court ruling just to be obstinate or to claim some special exemption for the Fifth Circuit.[4]

---

[3] The *Gross* Court explained that if Congress intended only to limit *Price Waterhouse*'s affirmative defense but leave intact *Price Waterhouse*'s interpretation of the words "because of," it would not have felt the need to add § 2000e-2(m); § 2000e-5(g)(2)(B) would have sufficed.

[4] The majority errs in suggesting we would have to renounce *Price Waterhouse* in order to reverse our precedent on Title VII in the light of *Gross*. *Price Waterhouse* addresses Title VII's discrimination provision, *not* Title VII's retaliation provision. However, I should note that the Supreme Court said in *Gross* that, with respect to *Price Waterhouse*'s mixed-motive

No. 08-11115

II.

The second error of the majority is its erroneous conclusion that the case before us is, under any standard, a mixed-motive case. The record shows that Smith challenged Xerox's asserted reasons for her termination, as pretextual, at every stage of the proceedings. She then relied on this allegation and evidence of pretext to argue that retaliation was *a* motivating factor for the discharge. In other words, she relied on *pretext* evidence and arguments to prevail on a *mixed-motive* theory. The reason for proceeding in this manner is obvious—by doing this she avoided both her burden under *McDonnell-Douglas* of showing but-for causation and her burden under *Price Waterhouse* of bringing forth substantial evidence of discriminatory animus. In affirming this approach, the majority fails to set out any distinction between mixed-motive and pretext cases. The consequence is that our opinion today thoroughly confuses our precedent on types of cases and methods of proof in Title VII cases, because it allows virtually every pretext case to be given to the jury as a mixed-motive case.

In attempting to distinguish between mixed-motive and pretext cases, the majority states, and, may I respectfully say, not in a particularly helpful way:

> Whereas pretext cases involve discernment of the true reason for the employer's action, which is either legal or illegal, motivating factor cases applying the *Price Waterhouse* test involve employment decisions based on multiple factors, or mixed motives, at least one of which was illegitimate and prohibited by statute and one of which may have been legitimate.

Maj. op. at 8. I would observe that most decisions, of any kind or sort, are prompted by a melody of motivations from which a dominant motive usually arises to dictate the action taken. This observation includes pretext analysis in

---

analysis, it is "difficult to apply" and "far from clear that the Court would have the same approach were it to consider the question today in the first instance." *Gross*, 129 S. Ct. at 2351-52. The Supreme Court was absolutely correct in its observation that the *Price Waterhouse* analysis is difficult to apply, as indicated by this case. Even the majority shows signs of frustration: "Illogical or not, that is the law we follow." Maj. op. at 20.

discrimination cases, which can encompass a spattering of mixed motives; the employer often alleges several non-prohibited motives for the termination (absenteeism, tardiness, insubordination, prior work—all in the same case), while the employee alleges that each of these motives were illegal because they constitute a pretextual shield for discrimination. In short, the majority is hardly correct in concluding that a search for the one "true reason" characterizes a pretext case. *Id.*

In any event, pretext and mixed-motive cases are distinctly two different methods of proving discrimination. What is a pretext case? It is a circumstantial case in which the plaintiff prevails by showing that the reason or reasons given for the employer's adverse action were spurious, which requires no specific showing of illegal animus toward the employee, but only a showing that the employer's reasons are false or otherwise unsupportable. Because the employer is in the best position to explain the termination, the jury is entitled to infer discrimination once the employer's explanation is proven false. What is a mixed-motive case? It is a case in which, although reasons for discharge are valid, i.e., not pretextual, the plaintiff prevails by showing that, notwithstanding the validity of the employer's stated motives for its actions, still *a* factor—in combination with valid factors—for the discharge was the motive to illegally discriminate. Given that the alleged pretextual motives are valid, this theory requires a showing of a specific illegal animus toward the employee that factored into the discharge, i.e., not "direct evidence," but evidence establishing specifically an illicit motive.

Smith's entire claim in this case was presented to the jury as pretext. Smith alleged that every reason given by Xerox for her termination was pretext for age and gender discrimination or, alternatively, pretext for retaliating against her because of her EEOC charge. Smith *did not* argue or acknowledge that the reasons for her discharge were valid; she argued that the employer's

31

No. 08-11115

reasons were pretextual, i.e., false, an illegal sham. And, both with respect to discrimination and retaliation, the jury was instructed accordingly: "If you disbelieve the reason(s) Defendant has given for its decision, [i.e., pretext,] you may infer Defendant terminated Plaintiff because she engaged in protected activity."[5] In short, if discrimination in an alleged mixed-motive case must be shown by *pretext*, it is not a mixed-motive case at all, it is a pretext case.[6] It should be that short and simple.

In sum, I would reverse and vacate the judgment and send the case back to the district court for retrial.

---

[5] If nothing else this language in the jury charge makes obvious that this was presented to the jury as a pretext case.

[6] Accordingly, we have long required plaintiffs who ask for a mixed-motive instruction to acknowledge the employer's legitimate motives for discharge. *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) ("The mixed-motive framework applies to cases in which the employee *concedes* that discrimination was not the *sole* reason for her discharge, but argues that discrimination was *a* motivating factor in her termination.") (first emphasis added). If the inference raised by disputing the employer's justification for termination were competent evidence to justify a mixed-motive instruction, then plaintiffs would, in every case, be able to bootstrap into a mixed-motive instruction without putting forward any additional evidence of discriminatory animus. Every pretext case would be a mixed-motive case, as the majority seems to acknowledge. Maj. op. at 20.

32